UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

OUSAMA KARAWIA and INTERNATIONAL
PROTECTIVE SERVICES, INC. d/b/a ISI,

        Plaintiffs,

   -v-                                                  No.  08 Civ. 5471 (HB)(GWG)

UNITED STATES DEPARTMENT OF LABOR,

        Defendant.

--------------------------------------------------------x

LAURA TAYLOR SWAIN, U.S.D.J. (Sitting as Part I Judge)

**ORDER**

        Plaintiffs Ousama Karawia ("Karawia") and International Protective Services, Inc. d/b/a ISI ("ISI") (collectively, "Plaintiffs") move for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, in an action seeking judicial review of an administrative debarment order entered by Defendant United States Department of Labor ("Defendant").  The matter came before the undersigned for a hearing on July 14, 2008.  The Court has jurisdiction of this action pursuant to 5 U.S.C. § 702.

        The challenged order provides for the debarment of Plaintiffs from eligibility for federal contracts and was issued pursuant to Section 5(a) of the Service Contract Act, 41 U.S.C. § 354(a).  That section provides in pertinent part that federal government contractors that fail to pay certain compensation to their employees are to be debarred from contract eligibility for three years, absent a Department of Labor recommendation that the sanction be withheld on account of "unusual circumstances."

        The Court has considered thoroughly the parties' submissions and written and oral

arguments. For the following reasons, Plaintiffs' motion is denied. This Order constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52.

## BACKGROUND

Plaintiffs are in the business of providing security services to federal and other governmental entities. On March 15, 1999, Defendant's Wage & Hour Division ("Wage and Hour") filed an agency complaint against Plaintiffs, alleging that they had violated the Service Contract Act ("the Act"), 41 U.S.C. §§ 351-358, by failing to pay wages and fringe benefits to their employees between March 1996 and February 1999. The litigation was terminated when the parties entered into a settlement agreement and executed a document captioned Consent Findings and Order (the "Consent Order") on May 9, 2001, whereby Plaintiffs agreed, without admitting to any violations of the Act to, inter alia, to employ an ombudsman who would oversee payroll complaints and legal counsel experienced in wage/hour matters, whom Plaintiffs were to consult whenever wage and benefit issues arose.

On March 28, 2003, Wage and Hour filed another complaint against Plaintiffs,[1] alleging that they had violated the Act in the time period following the entry of the Consent Order. On July 6, 2005, the assigned Administrative Law Judge (the "ALJ") concluded that Plaintiffs had violated the Act by failing to pay approximately $600,000 in wages and fringe benefits to about 2,000 employees after May 2001, and that no "unusual circumstances" existed so as to warrant relief from the mandatory debarment provisions of the Act. The ALJ ordered that Plaintiffs be debarred pursuant to 41 U.S.C. § 354, which would prevent Plaintiffs from contracting with the

---

[1] The complaint named the respondent corporate entity as "ISI," rather than using its true legal name, "International Protective Services, Inc."

federal government for the next three years.

In connection with his determination that no unusual circumstances existed, the ALJ found that Plaintiffs had exhibited culpable conduct -- specifically, culpable neglect in ascertaining whether the practices in question were in violation of the Act -- based on the "astounding" number of violations and Plaintiffs' failure to establish the safeguards required by the consent order. Plaintiffs appealed that decision and, on December 21, 2007, Defendant's Administrative Review Board (the "ARB") affirmed the ALJ's decision ordering debarment, also determining, on grounds substantially similar to those cited by the ALJ, that Plaintiffs' culpable neglect to ascertain the legality of the offending practices precluded a recommendation that unusual circumstances existed. The ARB rejected, inter alia, Plaintiffs' argument that unusual circumstances existed because Plaintiffs' failure to pay their employees was the result of a cash flow problem arising from the federal government's own late payments to Plaintiffs under the relevant contract. In doing so, the ARB relied on a 1992 agency decision, In the Matter of: Kleen-Rite Corp. and Harold Greenspan, BSCA No. 92-09, slip op. at 3 (Oct. 13, 1992), which rejected a similar argument on the basis that there was no provision in the Act or the regulations promulgated thereunder that permitted a contractor to wait until being reimbursed by another party before fulfilling its obligations to its employees. Plaintiffs moved for reconsideration; the ARB denied that motion on May 30, 2008.

This action followed. In the instant motion practice, Plaintiffs seek a preliminary injunction enjoining Defendant from forwarding Plaintiffs' names to the Comptroller General, who in turn would place Plaintiffs' names on a list that is distributed to all agencies of the federal government, prohibiting any such agency from contracting with the persons and entities named on that list. See 41 U.S.C. § 354(a); 29 C.F.R. § 6.21. Defendant has agreed to refrain from forwarding Plaintiffs' names pending the outcome of this preliminary injunction motion.

DISCUSSION

In the Second Circuit, in order to obtain a preliminary injunction, the moving party generally must show that: (1) it is likely to suffer irreparable injury; and (2) either a likelihood of success on the merits of its case; or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979). However, when the moving party "seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." Plaza Health Laboratories, Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989). The parties disagree as to whether, under these conditions, Plaintiffs must, with respect to the likelihood of success prong, therefore meet an elevated "clear or substantial" likelihood of success standard. Compare No Spray Coalition, Inc. v. City of New York, 252 F.3d 148, 150 (2d Cir. 2001) with Cty. of Nassau, New York v. Leavitt, 524 F.3d 408, 414 (2d Cir. 2008). The Court need not resolve this dispute however, because Plaintiffs have failed to demonstrate, under any standard, that they are likely to succeed on the merits of this action, which is brought pursuant to the federal Administrative Procedures Act (the "APA"). Under the APA, a federal district court may hold unlawful and set aside agency action, findings, and conclusions found to be, inter alia, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. See 5 U.S.C. § 706. Agency findings of fact are conclusive if supported by a preponderance of the evidence. See 41 U.S.C. §§ 353, 38-39; Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58, 69-70 (1st Cir. 1999).

Under the Service Contract Act, contractors with the federal government must pay

their employees minimum wages and fringe benefits, as designated by the Secretary of Labor. See 41 U.S.C. § 351(a)(1)-(2). Contractors found by the Secretary to have violated such wage and benefit requirements are "debarred," that is, their names are placed on a list forwarded by the Comptroller General to all federal agencies, who are thereafter barred from contracting with the offender for three years. See 41 U.S.C. § 354(a). The only exception to the three-year ban arises if "unusual circumstances" surround the violation. See id. While the Act does not define "unusual circumstances," the Department of Labor has promulgated regulations setting forth a three-part test to determine whether "unusual circumstances" exist. See 29 C.F.R. 4.188.

The first prong of the test lists several factors that must be present in order to qualify for the unusual circumstances exception. These factors include lack of willful or deliberate conduct, and lack of culpable conduct, such as neglect to ascertain whether the practices in question were in violation. The second prong of the test lists additional factors that must be present, and the third prong of the test lists factors that must be considered in making an "unusual circumstances" determination. The third prong is not reached unless the first two prongs have been satisfied. See 29 C.F.R. 4.188.

Plaintiffs do not contest the ARB's determination that Plaintiffs violated the Act by failing to pay employees on time. Rather, Plaintiffs argue principally that the ARB's determination that no unusual circumstances precluded debarment was wrong. In the context of this preliminary injunction motion practice, the Court must therefore consider whether Plaintiffs have, inter alia, demonstrated a likelihood that they will ultimately be able to succeed in proving that the ARB's determination was was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. See 5 U.S.C. § 706.

Citing Elaine's Cleaning Service, Inc. v. US DOL, 106 F.3d 726 (6th Cir. 1997),

Plaintiffs argue that the ARB erred in failing to consider whether Plaintiffs' late payroll payments were actually caused by the government's late payments to Plaintiffs under the contract.[2] In Elaine's Cleaning Service, the Sixth Circuit affirmed the district court's vacatur of a debarment order because "the ALJ did not allege [sic] facts from the record to justify its decision" that culpable conduct existed to preclude a finding of unusual circumstances. Here, however, the ARB explicitly premised its determination that culpable conduct existed on the ALJ's findings that Plaintiffs committed the violations following the entry of the Consent Order, which had expressly required them to establish employee complaint and legal compliance mechanisms designed to prevent future violations, that they had failed to implement the required procedures, and on the sheer size of the underpayments and number of employees affected. The foundational problem that triggered vacatur in Elaine's Cleaning Service thus is not present here. Nor do Plaintiffs point to any controlling authority requiring Defendant to withhold debarment when violations are allegedly attributable to late payments by the government entity. Furthermore, the ARB's decision makes it clear that the ARB considered, and rejected, Plaintiffs' cash flow argument.

        Plaintiffs have failed to demonstrate that they are likely to succeed in establishing that Defendant's rejection of Plaintiffs' unusual circumstances argument on the basis of the agency precedent of Kleen-Rite and the sheer size of underpayments and number of employees affected

---

[2] Plaintiffs also rely on Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58 (1st Cir. 1999), but Dantran appears to be inapposite. While the case does note in the factual background section that the contractor failed to meet pay approximately $40,000 in wages due in July 1991 as a result of late government payments, the overturned debarment order had been based on unpaid fringe benefits and the timing of wage payments, not the failure to meet the July 1991 payroll. See id. at 61.

was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.[3]

Plaintiffs also fault the ARB for rejecting their argument that debarment is precluded because Plaintiffs were "de facto" debarred in 2002, when ISI was removed from a list of "pre-qualified" government contractors.  However, the cases cited by Plaintiffs involving "de facto debarment" simply illustrate the rule that parties who are not formally debarred, but rather are de facto debarred, are entitled to due process.  See, e.g., Leslie and Elliott Co., Inc. v. Garrett, 732 F. Supp. 191 (D.D.C. 1990).  Plaintiffs clearly had notice and an opportunity to be heard in connection with the challenged debarment proceedings; their contention that they have already suffered by reason of the earlier action does not, on this record, suggest a likelihood that they will be able to succeed in meeting the APA § 706 standard for setting aside Defendant's determination that debarment was required in light of the Plaintiffs' Service Contract Act violations.

Karawia argues that he himself should not be debarred because he was not personally responsible for the violations.  The ARB rejected that argument and Karawia has not demonstrated that he is likely to succeed in advancing it in this proceeding.  Plaintiffs point to nothing in the agency record that is inconsistent with Defendant's underlying factual finding, based on Karawia's own testimony, that Karawia had substantial control over ISI's operations with respect to the relevant contract and was therefore a responsible party for purposes of the statute. See 41 U.S.C. § 352(a).

---

[3] Plaintiffs also asserted, at oral argument, that the government representative working with Plaintiffs purposefully withheld the government payments because of invidious discrimination on account of Karawia's race.  However, even if there were racial animus behind the government's late payments, Plaintiffs' burden of demonstrating that the Department of Labor's application of the Service Contract Act debarment provisions was arbitrary, capricious, an abuse of discretion or otherwise contrary to law is no more likely on the current record, to be met.

Plaintiffs also challenge the ARB's determination that it had personal jurisdiction over ISI because ISI had waived the issue, a determination based on the ALJ's findings that ISI had answered the complaint, filed motions and fully defended against the complaint at the hearing. However, Plaintiffs fail to identify anything in the record contradicting Defendant's factual findings with respect to ISI's participation in the proceedings below. Plaintiffs thus fail to demonstrate a likelihood of success in ultimately showing that the underlying findings of fact were not based on a preponderance of the evidence or that the agency's legal conclusion based on those factual findings was arbitrary, capricious, an abuse of discretion or otherwise contrary to law.

Lastly, Plaintiffs appear to argue that, because they were "de facto debarred" in 2002 based on the same violations at issue in this case, the formal debarment proceedings initiated in 2003 triggered the Double Jeopardy Clause of the Fifth Amendment. Plaintiffs have failed to demonstrate a likelihood that this double jeopardy argument, consisting of a citation to United States v. Halper, 490 U.S. 435 (1989), without any explanation as to how that case supports a double jeopardy argument in the context of this civil proceeding, will succeed. The Double Jeopardy Clause "protects only against the imposition of multiple criminal punishments for the same offense." Hudson v. United States, 522 U.S. 93, 99 (1997) (citations omitted). Plaintiffs put forth no reason why double jeopardy should apply when the alleged de facto debarment was not imposed for any criminal "offense," and the instant debarment proceeding is also a civil one. Therefore, Plaintiffs' double jeopardy argument contributes nothing to Plaintiffs' likelihood of success in the context of this motion practice.

For the foregoing reasons, the Court concludes that Plaintiffs have failed to carry their burden of demonstrating that they are likely to succeed[4] in proving that Defendant's determination not to exempt Plaintiffs from debarment was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. Because Plaintiffs fail to meet the likelihood-of-success prong of the preliminary injunction standard, it is not necessary to address whether Plaintiffs have demonstrated a likelihood of irreparable harm.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is denied.

Dated: New York, New York
       July 17, 2008

                                                LAURA TAYLOR SWAIN
                                                United States District Judge (Part I)

---

[4] Even if Plaintiffs were still permitted, given the nature of the relief sought, to rely on the "fair ground for litigation" prong of the Second Circuit's preliminary injunction standard, the Court also concludes, based on the foregoing reasons, that Plaintiffs have not met that standard.